McGirk, C. J.
delivered the opinion of the Court.
This is an appeal from Chancery, to reverse a decree of dismissal of the appellants’ hill of complaint aad dissolution of an injunction.
The hill shows that in 180G, Clamorgan and Lisa made their bond to Guisse & Snider, for twelve thousand dollars, conditioned that if they should, by the first of April, 1808, pay six thousand dollars, payable in shaved deer skins at 40 cents to the pound, then the bond was to be void, &c.; on this bond there was judgment in the Supreme Court in 1813, for six thousand dollars, and interest on that sum at the rate of six per cent, per annum.
The plaintiffs’ intestates bring- their bill to be relieved against a part of this judgment, and obtained an injunction for a considerable part of the judgment, say one-sixth and the interest thereon. The bill alledges and insists that in the year 1806, in this county, shaved deer skins at 40 cents per lb., were only worth 33 1-3 cents in money; or in other words, that a peltry dollar was in value two and a half pounds of skins, and that a silver dollar was equal to three pounds of deer skins, making a difference of one-sixth; and it is alledged by the bill, that by the custom of the •country, a contract like the present was understood and taken to be a peltry contract, and that the sum of s'x thousand dollars being mentioned, was to be understood as a means for ascertaining the number of pounds of deer skins to be paid, when .taken in connection with the price of the pound being fixed a.t 40 cents.
The hill alledges also, that Morrison is the real owner of this judgment, and that Guisse, Snider & Summers have no interest therein, and that Morrison being the owner on the trial of this cause at law-, it was refused to them to give credits or allow a set-off, which ought to have been allowed against Morrison.
The bill further insists, that inasmuch as in April, 1808, deer skins had fallen to 20 •cents per lb., and that as 15,000 lbs. of deer skins was the real thing contracted for, that 20 cents per lb. on that amount should be the measure of damages.
The first question urged before this Court, is, that this being a penal bond, this Court, although the Court of Law did enter into the condition, and gave a construction thereto, are not ousted of their equitable jurisdiction to do so, and to pare .down the damages if the complainants construction of the condition is right.
*100 Second. That there should be a decree against Morrison, because it is alledged he undertook to give a credit of $2,000 on the bond, while he held it as agent, he at that time owing Manuel that amount, which credit he failed to give ; and also, that one Menard owing Manuel Lisa $1,100, Morrison undertook to collect that, and credit it also on the bond, which he failed to do; and also that the bill alledges Morrison at that time was the real owner of the bond. And, thirdly; that the bond is to be considered as a peltry bond, and worth one-sixth less than a cash bond; therefore, there must be a deduction of one-sixth; and that also, that the bond, is to be so construed, that the value of 15,000 lbs. of shaved deer skins, at the time of payment, shall be the measure of damages, which was 20 cents per lb., which would, reduce the sum to $3,000 with interest. As to the first question, will a Court of Equity look into the condition of this bond, a Court of Law having done so, and given it a. construction? There is no proposition more clear, than that a Court of Law, by the common law, could not relieve against a penalty, (until authorized by statute;.) The hill shows that judgment was given on the bond for $6,000 with interest. Thus-it appears, the Court rendering that judgment, gave the condition of the bond a different construction from that sought for by complainants. Now if we should find that justice has been done, and a judgment has not been given for too much, the party has no right to complain, and in that event a disposition of the first point will be unnecessary.
The exhibit marked A., which is a copy of the bond, and invoice of the sale of goods, for which the bond was given; the invoice shows a sale of 21,532 yards of merchandise, at 30 cents peryard, making $6,459 60-100. Thus it appears what the consideration of the bond was, and that it was really $6,000, calculating 100 cents to each dollar.
It was proved that the custom set up' did prevail, but whether that custom had the force of law or not, does not appear, nor does it appear that any such custom was in the mind of the parties at the time of making this contract; then, unless this custom amounted to law, it could have no effect on this contract, and at all events this mode of expounding contracts by parol evidence of the understanding of some, is extremely dangerous, and by law is not admissible. The contract must he expounded from its face, and by the law of the land here; then looking at the instrument and comparing it by the rules of law, the parties have liquidated their own damages to $6,000, which $6,000 is dischargable (if the party chooses) by the payment of 15,000 lbs. weight of deer skins; if these deer skins are not paid, the debt nevertheless remains fixed at $6,000. This, we are of opinion, is the true andlawful construction of this instrument, so that we cannot perceive injustice has been done by the defendants in Chancery, in requiring payment to that amount. If judgment had been given for the whole penalty, yet if the party would enter a release for all above the real demand, there would be no cause of complaint; now if the Court render judgment for the real demand, there would be no equitable cause of complaint; here, we tliink, the judgment was not for too much, therefore no cause of complaint.
The answer of Summers denies Morrison had any interest in the bond. Morrison’s answer also denies it, and no proof is brought on that point, so that matter is at rest.
That mode of reasoning, which seeks to malee the value of the peltry the measure of damages, we cannot comprehend; it has no legal foundation; the rule is the value of the thing when to he paid, is the measure of damages, unless the parties have *101 fixed the value; here the value is fixed, not in peltry, hut in cents, a thing known to he law ; so that we see no reason for any thing alledged in the hill, nor for any thing brought in proof to reverse the decree of the Court of Chanceiy, in dismissing the bill, so far as relates to Guisse, Snider & Summers; w.e are also of opinion that the decree dismissing the hill as to Morrison, was right, for unless his had faith, if any had been proved upon him, could he coupled with Guisse & Snider, the two parties could not be joined, and the rule is that several injuries cannot he joined in Chancery, any more than at law, as where several persons whose acts are disconnected, injure the same person; the remedy is several against each; hut Morrison denies the allegations of the hill against him, and there is no proof, hut by one witness, without any circumstances to support tire witness ; therefore, on that ground, no decree could he against him.
Let the decree of the Court of Chancery he affirmed, except so much thereof as gives three per cent, damages, which is hereby reversed ; and that decree is hereby amended, so as to give six per eent. for damages on the amount, so enjoined ; and this Court do award for damages on the amount so decreed, by the said Court of Chancery, at the rate of eight per centum per annum, from the rendition thereof to this day, together with legal interest from this time until paid; and together also, with costs and charges by the defendants in this Court, laid out and expended; the whole to be levied of the estate of I. Glamorgan and Manuel Lisa, in the hands of their respective executors.